**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **DAVID LEAKEY, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:10-CV-17(MTT)** |
| ) | |
| **CORRIDOR MATERIALS, LLC, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>ORDER</u>

This matter is before the Court on Defendants' Motion for Judgment on the

Pleadings and to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction

(Doc. 55)[1] and Plaintiffs' Motion to Strike or Exclude (Doc. 102). The Corridor

Defendants claim that a Consent Order negotiated by the Corridor Defendants and the

Georgia EPD prohibits the Leakeys from asserting federal Clean Water Act violations

against them. The Corridor Defendants filed numerous exhibits in support of their

Motion, and the Leakeys moved to strike and/or exclude several of the exhibits because

the exhibits constitute evidence outside of the pleadings, had not been authenticated,

and were subject to evidentiary objections including hearsay and expert testimony

objections.  (Doc. 102).

---

[1] Defendants Corridor Mining, LLC, Corridor Materials, LLC, SE Real Estate Holdings, LLC, Bill
Beauregard, and Robert Pereira move the Court for dismissal of the Leakeys' claims.
Defendants Claude Graham, Jim Graham, Arthur Williams and Graham Brothers Construction
Company do not move for dismissal of the Leakeys' claims.  Thus, the Court will refer to the
Defendants bringing the Motion as the "Corridor Defendants."

For the following reasons, the Corridor Defendants' Motion is **DENIED** and the Plaintiffs' Motion is **DENIED**.

## I.  FACTUAL AND PROCEDURAL HISTORY

The Corridor Defendants are the owners and operators of the Culverton Quarry. The Culverton Quarry is located in Hancock County, Georgia and consists of approximately 493 acres near Sparta, Georgia.  The Plaintiffs, Jan and David Leakey, own property located downstream of the Culverton Quarry site.  The Leakeys' property includes a two acre pond and "an attendant wetland system."  (Doc. 1).  The Leakeys contend that the Corridor Defendants' land disturbance and construction activities have caused and continue to cause discharges of eroded soils, sediment-laden storm water, rock, sand, dirt, debris, and other pollutants into the Leakeys' pond and wetlands. Further, the Leakeys allege that the Corridor Defendants failed to obtain the proper permits required by state and federal law, including but not limited to, a General Construction Permit and permits for industrial and/or construction storm water discharges.  The Leakeys also allege that the Defendants violated and continue to violate several other Clean Water Act "effluent standards and limitations," specifically, those set forth in 33 U.S.C. §§ 1311, 1319, 1321, and 1342.  (Doc. 1).

In 2007, the Corridor Defendants obtained a Surface Mining Permit, a Water Quality Permit, and an Air Quality Permit from the Georgia Department of Natural Resources, Environmental Protection Division (Georgia EPD) for the Culverton Quarry. (Doc. 55-2 at 1).  The Leakeys allege that by March 2008 the Corridor Defendants had conducted extensive clearing, grubbing, mass grading and other site preparations at the Culverton Quarry.  The Corridor Defendants contend that they did not begin clearing

and grading land for the Quarry until May 2008.  Regardless of when construction

began, the Georgia EPD subsequently issued the Corridor Defendants two Notices of

Violation, one in October 2008 and the other in March 2009.  These violations stemmed

from the release of sediments and other pollutants from the Culverton Quarry to

wetlands located on the Corridor property and state waters.  After the March 2009

Notice, the Georgia EPD and the Corridor Defendants negotiated a Consent Order to

address the EPD's specific concerns with the Culverton Quarry's permit violations. They

executed the Consent Order on May 27, 2009.

The Consent Order addresses the Corridor Defendants' violations of their

Surface Mining Permit, which covers discharge into Dry Creek in the Ogeechee River

Basin.  (Doc. 58-3 at 3).  Although the Consent Order does not mention the Corridor

Defendants' Water Quality Permit, it references both the Georgia Surface Mining Act

(O.C.G.A. § 12-4-50, *et seq.*) and the Georgia Water Quality Control Act (GWQCA)

(O.C.G.A. § 12-5-20, *et seq.*).  In fact, the Consent Order mentions, and resolves,

certain GWQCA violations.[2]

Pursuant to the Consent Order, the Corridor Defendants were required to pay a

$20,000 fine, immediately implement and maintain erosion and sediment control

measures as outlined by the "Manual for Erosion and Sediment Control in Georgia,"

implement a Wetland Restoration Plan to mitigate wetland disturbances, and submit

monitoring reports to the Georgia EPD for one year.  The Corridor Defendants waived

---

[2] As discussed below, the Leakeys place much, the Court thinks too much, emphasis on the fact
that the Consent Order does not specifically mention the Corridor Defendants' Water Quality
Permit, lack of permits relating to the industrial and/or construction storm water discharge, and
other CWA "effluent standards and limitations."

any right to a hearing with respect to the contents of the Order. Further, the parties agreed that the Consent Order was final and could not be appealed.

## II. STANDARD OF REVIEW

The Corridor Defendants argue that the Court is authorized to dismiss the Leakeys' complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(c), 12(b)(1), or 12(h)(3). Alternatively, they contend that the Court can dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). The Leakeys' argue that the Court should convert the Corridor Defendants' Motion to a motion for summary judgment, claiming that the Corridor Defendants are attempting to "circumvent the safeguards afforded to [the] Plaintiffs under a Motion for Summary Judgment." (Doc. 103 at 8).

In general, a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of jurisdiction take one of two forms—a facial attack or a factual attack. *Garcia v. Copenhaver, Bell & Assocs. M.D.'s*, 104 F.3d 1256, 1261 (11th Cir. 1997). A facial attack "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (internal citations and quotations omitted). On the other hand, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* at 1529 (internal quotations and citations omitted). Thus, no presumptions of "truthfulness attaches to the plaintiff's allegation and the existence of

disputed material facts will not preclude the [] court from evaluating [] the merits of the jurisdictional issue." *Id.*

However, in the case of a factual attack on subject matter jurisdiction, a court should only proceed under Rule 12(b)(1), "if the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). If the merits of the plaintiff's cause of action are implicated in the jurisdictional analysis, then a court should convert the Rule 12(b)(1) motion to a Rule 56 motion for summary judgment. *See id.* The determinative issue is whether resolution of the jurisdictional question requires resolution of an aspect of a plaintiff's substantive claim.

Here, the jurisdictional issue arises from 33 U.S.C. §§ 1319(g)(6)(A)(ii) and (iii). To resolve the subsection (ii) jurisdictional question, a court must answer three questions: (1) whether the state has commenced an action; (2) whether that action is being diligently prosecuted; and (3) whether that action is being prosecuted under a comparable state law. 33 U.S.C. § 1319(g)(6)(A)(ii). To resolve the subsection (iii) jurisdictional issue, a court must answer two questions: (1) whether the state has issued a final order not subject to further judicial review; and (2) whether the violator has paid a penalty assessed under a comparable state law. 33 U.S.C. § 1319(g)(6)(A)(iii).

Neither of these analyses implicates the Leakeys' substantive cause of action brought pursuant to 33 U.S.C. § 1365(a). The substantive issue under § 1365(a) is whether the Corridor Defendants are in violation of an effluent standard or limitation, specifically, effluent standards and/or limitations set forth in 33 U.S.C. §§ 1311, 1319, 1321, and 1342. (Doc. 1 at ¶ 91); *See Paper, Allied-Industrial, Chemical and Energy*

*Workers International Union v. Continental Carbon Co.*, 428 F.3d 1285 (10th Cir. 2005) (holding that "it is appropriate for [a] district court to consider extra-pleading evidence in its resolution of the Rule 12(b)(1) motion without first converting the motion into one for summary judgment" when, like here, a plaintiff's substantive cause of action was brought pursuant to 33 U.S.C. § 1365 and the jurisdictional issue was raised by 33 U.S.C. § 1319(g)).

Therefore, because the facts necessary to sustain the Court's subject matter jurisdiction do not implicate the underlying merits or validity of the Leakeys' claims, the Defendants' Motion is analyzed pursuant to Rule 12(b)(1).

### III. THE CORRIDOR DEFENDANTS' RULE 12(b)(1) MOTION TODISMISS FOR LACK OF SUBJECT MATTER JURSDICTION

**A.    The Clean Water Act**

**1.    Generally**

The Clean Water Act (the CWA) was enacted in 1948; however, its 1972 amendment "established the regulatory framework that essentially exists today to protect our Nation's waters."   *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986, 987-88 (11th Cir. 2008).  The amended legislation "established a system of effluent limitations, water quality standards, discharge permits, and other regulatory mechanisms to be administered by the federal EPA and the various states in order to restore and maintain the chemical, physical, and biological integrity of the Nation's waters and enabled a private citizen, for the first time, to bring a civil action in federal court against any person or government that violated the effluent or limitation requirements of the [CWA]."   *Id.* at 988 (internal quotation and citation omitted).  "The addition of the citizen suit provision struck a balance between government and private

enforcement by allowing citizens to bring suits against polluters."  *Id.*   The citizen suit provision of the CWA provides specifically, that "any citizen may commence a civil action on his own behalf against [anyone] who is alleged to be in violation of (a) an effluent standard or limitation under this chapter or (b) an order issued… with respect to such standard or limitation."  33 U.S.C. § 1365(a).

However, CWA citizen suits, brought pursuant to § 1365(a), are subject to the CWA's "limitation on actions" provisions.  33 U.S.C. § 1319(g)(6)(A).   For example, citizens cannot bring a citizen suit when "either the federal government through the EPA or a state agency" has commenced and is prosecuting a civil or criminal action against the polluter in state or federal court.  *Black Warrior Riverkeeper*, 548 F.3d at 988.  Further, in 1987, Congress again amended the CWA to permit the "EPA and states to assess penalties against polluters … through a completely new administrative enforcement scheme [33 U.S.C. § 1319]."  *Id.*  Through this amendment, "Congress extended the bar against citizen suits when the federal government or a state agency has commenced an enforcement action through the new administrative penalties process."  *Id.*

### 2.    Applicable Clean Water Act "Limitation On Actions" Provisions

The CWA "limitation on actions" provisions potentially relevant to this action are set forth in 33 U.S.C. §§ 1319(g)(6)(A) (ii) and (iii).  Subsection (ii) bars citizen suits when the "State has commenced and is diligently prosecuting a civil [,] criminal," or enforcement proceeding against the polluter pursuant to *comparable State law*.  33. U.S.C. § 1319(g)(6)(A)(ii); *McAbee v. City of Fort Payne*, 318 F.3d 1248, 1251 (11th Cir. 2003).  Subsection (iii) bars citizen suits on all claims for which "the State has issued a

final order not subject to further judicial review and the violator has paid a penalty assessed under … *comparable State law*…." 33 U.S.C. § 1319(g)(6)(A) (iii) (emphasis added).  Both subsections require that the State's actions or final administrative order be undertaken pursuant to a comparable State law.

Subsection (iii) is the potentially applicable limitation on the Leakeys' CWA claims.[3]  The Corridor Defendants assert that the final Consent Order issued by the Georgia EPD bars the Leakeys' CWA citizen suits.  Neither party disputes that the Corridor Defendants have paid penalties for certain violations pursuant to this Consent Order.[4]  (Doc. 58-3).  Further, there is no dispute that the Consent Order is a final order not subject to further judicial review. *See e.g., McAbee*, 213 F.3d at 1252.  The Consent Order provides it is "final and shall not be appealable, administratively or judiciously, and the Respondent hereby waives any right to a hearing with respect to the contents of

---

[3] The Defendants' assert that the subsection (ii) "limitation on actions" bar is applicable. However, the facts do not indicate that the Georgia EPD has undertaken any action against the Corridor Defendants after the issuance of the final Consent Order.  Regardless, even under subsection (ii), the state agency's actions must be taken pursuant to a comparable State law.

[4]  The Court recognizes that the Leakeys argue that the Consent Order only covers the Corridor Defendants' violations of their Surface Mining Permit and the Georgia Surface Mining Act. Indeed, the Leakeys focus on this argument almost completely to the exclusion of any comparability analysis of applicable laws and regulations.  Specifically, the Leakeys argue, no "limitation on actions" analysis is needed because there is no overlap between the CWA violations alleged in their complaint and the violations penalized in the Consent Order.  Because of the Court's comparable state law analysis, *supra* III.B.2., it is unnecessary to discuss in detail the Leakeys' argument.  However, the Court notes that the pertinent question would be whether the actions taken by the Georgia EPD and the Consent Order are calculated to eliminate the same *cause* of the violations the Leakeys allege in their Complaint.  *See Friends of Milwaukee Rivers and Lake Michigan Federation v. Milwaukee Metropolitan Sewerage District*, 382 F.3d 743, 760 (7th Cir. 2004).  Contrary to the Leakeys' assertions it is clear that some violations alleged in their Complaint overlap with violations penalized in the Consent Order, i.e., discharges of sediments into jurisdictional waters.

this Order or any portion thereof."  (Doc. 58-3 at 5).  The Corridor Defendants do not argue any other measures taken by the Georgia EPD, other than those encompassed in the Consent Order, bar the Leakeys' CWA claims.  Consequently, if Georgia's administrative enforcement scheme is "comparable to [33 U.S.C.] § 1319(g)," subsection (iii) would bar some of the Leakeys' claims, i.e., those claims that gave rise to the Corridor Defendants' $20,000 penalty paid pursuant to the Consent Order.

**B.**    **Comparable State Law Analysis**

     **1.**    **The *McAbee* "Rough Comparability" Standard**

In *McAbee v. City of Fort Payne*, the Eleventh Circuit adopted a "rough comparability" test to apply when determining whether the CWA's enforcement scheme is comparable to a state's statutory scheme.  *McAbee*, 318 F.3d at 1256.  Rejecting several other circuits' standards for determining comparability, the Eleventh Circuit held that courts should focus on three categories of provisions contained in 33 U.S.C. § 1319(g): penalty assessment, public participation, and judicial review.  *Id.* at 1254. Each category of the applicable CWA provision must have a "roughly comparable" provision under state law in order for the bar against a CWA citizen suit to apply.  *Id.* at 1256.  Thus, the Court must engage in an independent analysis of each category of state law provisions, and if one state law provision is not roughly comparable to the applicable federal law provision, then a citizen suit is not precluded.  *See id.* [5]

---

[5] While noting "the most reliable indicator of congressional intent is the language of the statute," the Eleventh Circuit relied on a persuasive comment made by Senator John Chafee, the principal author and sponsor of the 1987 CWA amendment, to support its conclusion that all three provisions must be roughly comparable.  *Id.* at 1256 n. 10.  Senator Chafee stated: "[T]he limitation of 309(g) applied only where a State is proceeding under a State law that is comparable to [33 U.S.C. 1319]. For example, in order to be comparable, *a State law must*

The Eleventh Circuit in *McAbee* noted that the CWA "limitation on actions" provision is unclear as to "which state-law provisions count as 'a State law' for purposes of the § 1319(g)(6)(A) analysis: that is, whether to look at the state's 'overall' statutory enforcement scheme in determining comparability or to look only to the particular statute under which the state" has either commenced and is diligently prosecuting an action or has issued a final order. *Id.* at 1255 n. 8.[6]  In *McAbee,* the Eleventh Circuit declined to resolve the issue because, in that case, considering the relevant provisions of Alabama's Administrative Code and Alabama's applicable water quality statute, the "State law" was still not comparable to the CWA's public participation provisions. *Id.*

After finding the penalty provisions sufficiently comparable, the Eleventh Circuit found several deficiencies in the Alabama public participation provisions when compared to the applicable CWA provisions.  First, the Alabama statutes "require[d] only ex post facto notice of enforcement action." *Id.* at 1256.  Further, "the Alabama statute allow[ed] the general public limited opportunities for participation in the administrative enforcement process.  Only the alleged polluter is allowed to participate in the … proceedings before issuance of a final order.  The public may not intervene in pre-order proceedings and may not submit comments, present evidence or request a hearing on a proposed assessment and order." *Id.* at 1257.  The Alabama statutes also

---

provide for a right to a hearing and for public notice and participation procedure similar to those set forth in [33 U.S.C. 1319]; it must also include analogous penalty assessment factors and judicial review standards…." *Id.* at 1256; citing 133 Cong. Rec. S737 (daily ed., Jan. 14, 1987) (emphasis in original).

[6] The primary disagreement among circuits is whether the phrase "a State law" allows courts to consider a state's overall enforcement scheme (both the state's administrative code provisions and the applicable water quality provisions), or if courts can only compare the federal provisions to the specific state law that the defendant has violated. *Id.*

only allowed the violator and other "aggrieved" parties to request a hearing or contest

the order.  *Id.*  Because of the state's limited public participation provisions, the Eleventh

Circuit held that Alabama's statutory scheme was not sufficiently comparable to the

CWA's enforcement scheme, and that the plaintiff's citizen suit was not barred by

§§ 1319(g)(6)(A)(ii) or (iii)—the applicable CWA "limitation on actions" provisions.

>    **2.**     **The Application of the *McAbee* Standard**

Here, Georgia's statutory scheme is not roughly comparable to the CWA's

enforcement scheme, and the Consent Order does not bar the Leakeys' CWA claims

against the Corridor Defendants.  Before applying the *McAbee* test, the Court must

decide which Georgia law provisions are relevant to the analysis.  As noted, *McAbee*

did not resolve the issue of whether courts should limit analysis to the particular state

statute at issue.  The Corridor Defendants ask the Court to consider not only the

GWQCA but also Georgia's Administrative Procedure Act and various administrative

regulations.  As in *McAbee*, the Court need not resolve that issue because even

accepting the Corridor Defendants expansive view of the relevant state statutes and

regulations, Georgia law, for the reasons discussed below, is not roughly comparable to

the relevant CWA provisions.

The *McAbee* rough comparability test requires the comparison of three

categories – penalty assessment, public participation, and judicial review – of Georgia

law with the CWA.  With regard to the penalty assessment comparison, the CWA allows

for Class I or Class II civil penalties.  Class I penalties cannot exceed $16,000 per

violation, with the maximum penalty capped at $37,500.  33 U.S.C. § 1319(g)(2)(A).

Class II penalties cannot exceed $16,000 a day, with the maximum penalty capped at

$177,500. 33 U.S.C. § 1319(g)(2)(B).   Georgia's statutory scheme for civil penalties

varies from $2,500-$5,000 per day with the maximum penalty capped at $50,000 per

day of violation and up to $100,000 total per day for repeat violations.  O.C.G.A. §§ 12-

5-53 (a), (c).  Although Georgia does not separate penalties into Class I and Class II,

both federal and Georgia regulatory schemes give their respective agencies discretion

to assess the penalties and use similar criteria when calculating penalties.  *Compare*

O.C.G.A. §§ 12-5-51, -52 *with* 33 U.S.C. § 1319.  Therefore, Georgia's penalty

provisions are roughly comparable to the CWA penalty provisions.

However, the federal and state public participation provisions are not roughly

comparable.  The CWA provides "interested persons,"  which essentially means

anyone, with the right to public notice and an opportunity to comment, the right to

present evidence if a hearing is held, and the right to petition for a hearing if one is not

held.  33 U.S.C. § 1319(g)(4); *See McAbee*, 318 F.3d at 1256.  Specifically, the

Administrator or Secretary must "provide public notice and a reasonable opportunity to

comment on the proposed assessment to any interested person" before issuing an

order assessing a civil penalty.  *McAbee*, 318 F.3d at 1256 (citing 33 U.S.C.

§ 1319(g)(4)(B)).  Then, the Administrator or Secretary must give notice of any hearings

regarding the penalty assessment to any person who commented on the proposed

penalty assessment.  33 U.S.C. § 1319(g)(4)(B).  "Finally, if no hearing is held before

the issuance of an order assessing a penalty, any person who commented on the

proposed assessment may petition … to set aside the order and hold a hearing on the

penalty."  *McAbee*, 318 F.3d at 1256 (citing 33 U.S.C. § 1319(g)(4)(C)).

The Georgia statutes do not contain analogous public participation provisions. First, the GWQCA public participation provisions only apply to persons who are aggrieved or adversely affected by any action or any order, rather than to any interested party.  O.C.G.A. § 12-5-43(a).  The Corridor Defendants cite no Georgia law or regulation suggesting that the Leakeys, or any member of the public, were adversely affected by the Consent Order.  Thus, there is no indication that interested parties have any right of participation.  Further, even those who are aggrieved or adversely affected parties "may [only] request and obtain a hearing by filing a petition with the director no later than 30 days after such order or notice of action is served upon such person." O.C.G.A. § 12-5-43(a).  Thus, the opportunity for participation by an aggrieved or adversely affected party arises upon service.  Yet the Corridor Defendants cite no provision requiring or even providing for the possible service of notice upon the Leakeys or those similarly situated.

With regard to notice, nothing in the Georgia scheme requires any public notice or opportunities for the public to comment on the Georgia EPD's proposed penalty assessment prior to, or seemingly even after, the order is entered. The public may not intervene in pre-order proceedings and may not submit comments, present evidence or request a hearing on a proposed assessment and order.  In comparison, the CWA provisions allow members of the general public, even those who have not suffered an injury, to participate in the enforcement process before and after the issuance of a penalty order.  In this regard, the Georgia scheme requires less notice than the Alabama statute considered by the Eleventh Circuit in *McAbee*.  There, Alabama law requires public notice after the issuance of the enforcement action in the form of a

newspaper bulletin.  *McAbee*, 318 F.3d at 1256.  This, the Eleventh Circuit held, was not roughly comparable to the notice provisions of the CWA.

After the parties' initial briefing of the Corridor Defendants' Motion to Dismiss, the Court ordered supplemental briefs on the narrow issue of the application of *McAbee*'s rough comparability standard to Georgia law.  (Doc. 112).  In their supplemental brief, the Corridor Defendants raise two arguments to support their contention that Georgia's public participation provisions are roughly comparable to its federal analogue.[7]  First, the Corridor Defendants cite O.C.G.A. § 50-13-14, a provision of Georgia's APA, which provides for intervention in "contested cases" before a Georgia agency upon timely application if the representation of the applicant's interest is "or may be" inadequate.  Although the Corridor Defendants do not address the meaning of contested cases, O.C.G.A. § 50-13-2(2) defines a "contested case" as "a proceeding … in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for a hearing."  The Corridor Defendants do not argue, and nothing in the record suggests, that the violations leading to the Consent Order constituted a contested case, or that the Leakeys or the public generally had any "interests" at stake that would have allowed intervention.  In short, the Corridor Defendants do not explain how this intervention statute would give a party like the Leakeys the right, or even the opportunity, to intervene.  Moreover, because it does not appear that any public notice

---

[7] The Court finds the Corridor Defendants' references to Georgia's Open Meetings Act, O.C.G.A. § 50-14-1, and Open Records Act, O.C.G.A. § 50-18-70, unpersuasive.  Neither of these statutes impact the "comparable State law" analysis with respect to the public participation provisions.  Further, the Corridor Defendants do not elaborate how any of the statutes are roughly comparable in substance; instead they list out the statutory content of several statutes and summarily state that Georgia's statutory scheme is roughly comparable.

is required prior to a hearing in a contested case, it is unclear how an interested party could intervene in a Georgia EPD penalty assessment hearing or in any "proceeding" related to a Georgia EPD administrative order.

The Corridor Defendants also cite a Georgia regulation that provides basic public notice and opportunity to comment in very limited situation when the Georgia EPD is issuing notices of administrative orders or consent orders.  Ga. Comp. R. & Regs. § 391-1-3-.01(2).  The regulation requires the Georgia EPD to give notice if a final consent order or proposed administrative order: (1) regulates substances that could endanger human health, (2) deals with compliance schedules exceeding a one year duration, (3) contains multiple orders issued to the same facility for the exact same violation, (4) if a party entering into the order requests in writing such notice and opportunity be issued.  *Id.*[8]

If anything, this regulation proves the point that the state and federal public participation provisions are not "roughly comparable."   The regulation creates an exception to Georgia's general rule that no public participation or opportunity to comment is required in a Georgia EPD penalty assessment proceeding.  The regulation merely highlights the fact that Georgia law essentially bars the public from participation in Georgia EPD penalty assessment proceedings unless the violation falls into one of four narrow categories.  In comparison, the CWA requires this basic public notice and opportunity to comment in *all* penalty assessment proceedings.  Further, the CWA

---

[8] It should be noted that the Corridor Defendants do not allege that any of these statutes applied to their violations. Further, the Corridor Defendants violations do not fall into the very limited situations elaborated in the Georgia regulations that would require public notice and opportunity to comment.

allows for more extensive public participation in *all* penalty assessment cases than Georgia provides for in those four specific categories.

In sum, "the differences in the [federal and state] statutes' public participation provisions … strike at the heart of whether the statute 'provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process.'" *McAbee*, 318 F.3d at 1257 (quoting *Ark. Wildlife Fed'n v. ICI Americas, Inc.*, 29 F.3d 376, 381 (8th Cir. 1994)).  Here, Georgia law simply does not provide for the necessary meaningful opportunity for the general public to participate in the Georgia EPD penalty assessment process.  Accordingly, the Consent Order issued pursuant to Georgia's statutory scheme does not bar the Leakeys' CWA citizen suit and CWA claims against the Corridor Defendants.[9]   Further, because the public participation provisions of Georgia law are not sufficiently comparable, the Court need not address the comparability of the applicable statutes' judicial review provisions.

## IV. THE LEAKEYS' MOTION TO STRIKE

The Corridor Defendants filed numerous exhibits along with their Motion, and the Leakeys' moved to strike and/or exclude from the Court's consideration several of the exhibits because the exhibits constitute evidence outside of the pleadings, had not been authenticated, and were subject to evidentiary objections including hearsay and expert testimony objections.  (Doc. 102).

---

[9] The Court notes that, even after being instructed by the Court to brief and apply *McAbee*'s "rough comparability" standard to the case, the Leakeys, instead, continued to argue that a "limitation on actions" analysis was inappropriate.

The Corridor Defendants subsequently submitted affidavits authenticating certain documents and submitted certified copies of the pertinent Georgia EPD documents.[10] Most importantly, most of the attached exhibits were not relevant to the Court's determination of the Corridor Defendants' motion and were not considered in making the determination that Georgia's statutory scheme is not comparable to the Clean Water Act.  Further, the Leakeys' expert testimony objections are irrelevant, because no testimony was considered by the Court in arriving to its above conclusion.  The Leakeys' Motion to Strike or Exclude from the Court's consideration is **DENIED**.   This determination should not thwart the Leakeys from pursuing similar objections as they deem necessary in future proceedings.

## V.  CONCLUSION

For the above stated reasons, the Corridor Defendants' Motion is **DENIED** and the Plaintiffs' Motion is **DENIED**.

**SO ORDERED**, this the 19th day of March, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[10] Further, documents can be considered at the summary judgment stage "when it is apparent that those documents can be reduced to admissible, authenticated form at trial."  *Walton v. Neptune Technology Group, Inc.*, 2009 WL 3379916, at *2.  The same reasoning applies to potential hearsay—it can be considered at the summary judgment stage if it would be admissible at trial under an exception to the hearsay rule or as non-hearsay.  *See e.g., Macuba v. Deboer*, 193 F.2d 1316, 1322-24 (11th Cir. 1999).